IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                          Case No. 25-CR-1075-GBW

JOSE FLORES-PENALOZA,

    Defendant.

## MOTION TO DISMISS

COMES NOW Defendant, Jose Flores-Penaloza, by and through undersigned counsel, and requests that this Court dismiss the Complaint filed in this case because the federal government cannot exercise the lawful jurisdiction necessary to prove certain necessary elements of the offenses charged.

The government alleges that Defendant trespassed into a newly created military zone in violation of 50 U.S.C. § 797 and 18 U.S.C. § 1382. Both statutes expressly require that a person violate a defense property regulation and/or trespass upon a relevant military instillation as a necessary element of the offense. *See generally id.* The Amry instillation[1] at issue here ("subject property" or so-called "Roosevelt Reservation") is a 60-mile strip of land situated between New Mexico and Mexico, which the government attempted to transfer from the Department of the Interior to the Department of the Army on April 21, 2025. *See* Public Land Order No. 7963 (attached as Exhibit 1).

---

[1] Although each statute covers a wide range of military properties, for simplicity, Defendant has adopted the term "Army instillation" generally because the subject property is now allegedly under the authority of the Department of the Army.

The subject property was originally designated by Presidential Proclamation on May 27, 1907. *See* Proclamation 758 (1907) (attached as Exhibit 2).[2] On April 21, 2025, the Department of the Interior, through Secretary Doug Burgum, "withdrew" the subject property pursuant to certain emergency procedures under the Federal Land Policy Management Act (FLPMA) and attempted to transfer it to the Department of the Army. *See* Public Land Order No. 7963 (attached as Exhibit 1); *see also* 43 U.S.C. 1714(e). As outlined below, Secretary Burgum lacked the statutory authority necessary to withdraw and transfer the subject property to another department of the Executive Branch. Therefore, the transfer of the subject property to the Department of the Army was void *ab initio* (*i.e.* from its inception).

For this reason, the Complaint must be dismissed because the Department of the Army lacks the requisite jurisdiction and authority over the subject property necessary to sustain a conviction under 50 U.S.C. § 797 or 18 U.S.C. § 1382.

When Congress delegates authority to an Executive Agency, the scope of that authority is shaped by the language of the statute granting that authority. *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). The FLPMA, authorizes that if the Secretary of the Interior "determines … that an emergency situation exists and that extraordinary measures must be taken to preserve values that would otherwise be lost,[3] the Secretary . . . shall immediately make a withdrawal and file notice

---

[2] At some point, the subject property became managed by the U.S. Bureau of Land Management, which is situated under the Department of the Interior. Although the management and jurisdictional history of the subject property prior to 2025 is not discussed herein, Defendant expressly reserves the right to challenge the federal government's alleged jurisdiction and authority on these grounds moving forward. Indeed, Defendant's silence should in no way be considered an admission or acquiescence to the legality of the federal government's treatment of said property prior to 2025.

[3] Defendant reserves the right to challenge the following issues—and any similar concerns—implicated by this language: (1) that there is indeed an "emergency situation" as specifically contemplated by the FLPMA; (2) that the alleged emergency situation threatens specific "values" that the FLPMA intended to allow the Secretary of the Interior

of such emergency withdrawal[.]" 43 U.S.C. § 1714(e). Relevant here, a "withdrawal" is defined as "withholding an area of Federal land from settlement, sale, location, or entry, under some or all of the general land laws, … or transferring jurisdiction over an area of Federal land, *other than 'property' governed by the Federal Property and Administrative Services Act* ("FPASA"), as amended in (40 U.S.C. § 472) from one department, bureau or agency to another department, bureau or agency." 43 U.S.C. § 1702(j) (emphasis added). The FPASA defines "property" as "any interest in property except:

> (A)(i) the public domain;
> (ii) land reserved or dedicated for national forest or national park purposes;
> (iii) minerals in land or portions of land withdrawn or reserved from the public domain which the Secretary of the Interior determines are suitable for disposition under the public land mining and mineral leasing laws; and
> (iv) land withdrawn or reserved from the public domain except land or portions of land so withdrawn or reserved with the Secretary, with the concurrence of the Administrator, determines are not suitable for return to the public domain for disposition under the general public land laws because the lands are substantially changed in character by improvements or otherwise;
> (B) naval vessels that are battleships, cruisers, aircraft carriers, destroyers, or submarines; and
> (C) records of the Government."

40 U.S.C. §§ 102(9)(A)-(C).

The so-called "Roosevelt Reservation" is considered property under the FPASA and therefore cannot be withdrawn or transferred under the FLPMA. Indeed, the subject property is not in the public domain, has not been designated National Park or National Forest, and has not been reserved or withdrawn on the grounds that the Secretary has deemed it suitable for disposition under public land mining and mineral leasing laws. It also has not been withdrawn or reserved by the Secretary, with the concurrence of the Administrator, as not being suitable for the public

---

to address; and (3) that "extraordinary measures" are *necessary* to conserve those specific values.

domain due to a substantial change in its character—and it certainly isn't a naval vessel or government record.

Because of this, the subject property is not "property" that can be subject to withdrawal and/or transfer under the FLPMA. Accordingly, Public Land Order No. 7963 is void *ab initio* because the Secretary of the Interior had no authority to "withdraw" the subject property or transfer it to another executive department. Because of that, the Department of the Army cannot exercise lawful control or jurisdiction over the subject property by operation of 43 U.S.C. § 1714(e), and thus no person can be prosecuted for trespassing on said property under 50 U.S.C. § 797 or 18 U.S.C. § 1382—which would require the subject property to indeed be an Army instillation.

To hold otherwise would set a perilous precedent in that it would undermine the separation of powers in a manner that allows unchecked military authority by the Executive Branch on American soil. As the Supreme Court has routinely recognized: "[e]xtraordinary grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle devices." *West Virginia v. Env't. Prot. Agency*, 597 U.S. 697, 723 (2022) (collecting cases) (internal quotations and alterations omitted); *see also Looper Bright Enter. v. Raimondo*, 603 U.S. 369, 405 (2024) (holding that agency deference "does not apply if the question at issue of one of deep economic and political significance") (internal quotations and citations omitted).

The transfer of public land from the Department of the Interior—an agency charged with the noble task of protecting and managing the Nation's natural resources and cultural heritage[4]—to the Department of the Army raises profound political concerns. This is especially true here, where the alleged "emergency" justifying the "emergency withdrawal" rests solely on the

---

4   See https://www.doi.gov/about.

President's unilateral claim that the Southern border is under "invasion" such that *military intervention* is warranted.[5]

The designation of public land as a new Army Instillation—without express and unequivocal Congressional authorization—for the sole purpose of enabling military action on American soil is a matter of staggering and unpreceded political significance. Such profound action can only be justified through an equally unambiguous and deliberate approval from Congress. The dubious subtlety through which the Army asserted control over the so called "Roosevelt Reservation" falls dramatically short of that constitutional imperative.

For the foregoing reasons, the Complaint against Defendant must be dismissed because Secretary Burgum's withdrawal and transfer of the subject property to the Department of the Army exceeded the statutory authority granted to the Secretary of the Interior under the Federal Land Policy and Management Act. *See* 43 U.S.C. §§ 1702 & 1714.

WHEREFORE, Defendant requests that this Court dismiss the Complaint with prejudice.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 S Main Street, Suite 400
Las Cruces, NM 88001
(575) 527-6930

***Electronically filed May 28, 2025***
By: /s/ Victoria Trull
Victoria Trull
Assistant Federal Public Defender

---

[5] *See* Presential Memoranda, Subsection 1(a)(ii) (April 11, 2025) (available at https://www.whitehouse.gov/presidential-actions/2025/04/military-mission-for-sealing-the-southern-border-of-the-united-states-and-repelling-invasions/).