IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 25-cr-1075 GBW |
| ) | |
| **JOSE FLORES-PENALOZA**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States hereby responds in opposition to Defendant's Motion to Dismiss.[1] ECF No. 12. In his Motion, Defendant argues that the Department of the Interior's (DOI) transfer of the "Roosevelt Reservation" to the Department of the Army was statutorily unauthorized and therefore void *ab initio*. *Id.* at 2. As explained below, Defendant's argument rests on a misapprehension of the relevant statutes at play. The Government accordingly requests that the Court deny the Motion.

I.  **BACKGROUND**

In 1907, President Theodore Roosevelt determined that it was "necessary for the public welfare that a strip of land lying along the boundary line between the United States and the Republic of Mexico be reserved … as a protection against the smuggling of goods between the United States and said Republic." 35 Stat. 2136 (attached as Ex. 1). President Roosevelt accordingly reserved the land "from entry, settlement, or other form of appropriation under the

---

[1] Defendant requests that the Court dismiss the criminal complaint. However, an information was filed in this case which superseded the criminal complaint. ECF No. 5. The Government has no objection to the Court construing Defendant's motion as requesting that the Court dismiss the information.

public land laws and set apart as a public reservation." *Id.* For more than a century, the resulting "Roosevelt Reservation" has served as a defensive bulwark against the unlawful trafficking of persons and contraband into the United States.

The President of the United States has now assessed that "[o]ur Southern border is under attack from a variety of threats" and "[t]he complexity of the current situation requires that our military take a more direct role in securing our southern border than in the recent past." The White House, *Military Mission for Sealing the Southern Border of the United States and Repelling Invasions* (Apr. 11, 2025). Accordingly, in April, the President directed the Department of the Interior to transfer the Roosevelt Reservation to the Department of the Army, which has now incorporated it—as the New Mexico National Defense Area (NMNDA)—into the U.S. Army Fort Huachuca installation. To that end, on April 15, 2025, the Department of the Interior transferred over 109,651 acres of federal land along the Border—including the approximately 60-foot-wide Roosevelt Reservation in New Mexico—to the Department of Defense. *See* Public Land Order No. 7963. Three days later, the Secretary of the Army made these lands, now designated as the New Mexico National Defense Area (NMNDA), part of the Fort Huachuca U.S. Army installation. The same day, Fort Huachuca's commander issued a security regulation designating the NMNDA as a restricted and controlled area under Army Regulation 190-13, which prohibits unauthorized entry onto such areas.

On April 29, 2025, Defendant was encountered by Border Patrol in Hidalgo County, New Mexico, approximately 25 miles west of the Antelope Wells Port of Entry. ECF No. 1. Upon questioning the Defendant, he admitted to being a citizen of Mexico and illegally present in the United States. Agents determined that the location where Defendant was suspected of crossing is

within the NMNDA. He was accordingly charged by criminal complaint with one count each of entering into the United States without inspection, in violation of 8 U.S.C. § 1325(a)(1); willfully violating a defense property security regulation, in violation of 50 U.S.C. § 797(a)(1); and going upon a military installation for a purpose prohibited by law or lawful regulation, in violation of 18 U.S.C. § 1382. On May 7, 2025, the Government filed an information reasserting these same charges. Defendant now moves to dismiss the NMNDA-related charges.

## II.     ARGUMENT

Defendant contends that the DOI lacked the statutory authority to withdraw and transfer the NMNDA to the Department of the Army. More specifically, Defendant argues that because the NMNDA falls under the definition of "property" pursuant to the Federal Property and Administrative Services Act (FPASA), it was improper for the DOI to withdraw and transfer the land pursuant to the Federal Land Policy Management Act (FLPMA). Defendant is incorrect.

As an initial matter, the Government will note what Defendant gets correct about the statutory scheme. First, Defendant is correct that under the FLPMA, the Secretary of the Interior is authorized to withdraw and transfer federal lands when he or she determines that "an emergency situation exists and that extraordinary measures must be taken to preserve values that would otherwise be lost[.]"[2] 43 U.S.C. § 1714(e). Defendant is also correct in noting that the FLPMA does not permit the withdrawal or transfer of federal land that falls under the definition of "property" under the FPASA.  43 U.S.C. § 1702(j) (defining "withdrawal," in part, as a transfer of "jurisdiction over an area of Federal Land, other than 'property' governed by the

---

2 The Government does not understand Defendant to be challenging the Secretary's determination of that emergency situation existed justifying the withdrawal at this time.

Federal Property and Administrative Services Act[.]"). Finally, Defendant correctly cites the governing definition of "property" under the FPASA. *See* 40 U.S.C. § 102(9).

But Defendant then errs, however, in his statutory analysis of the exemptions to the definition of property and his corresponding conclusion that the Roosevelt Reservation was not exempted from the definition of "property" under the FPASA. Among other exemptions, the FPASA exempts from the definition of "property": "**land withdrawn or reserved from the public domain** *except* land or portions of land so withdrawn or reserved which the Secretary…determines are not suitable for return to the public domain for disposition under the general public land laws because the lands are substantially changed in character by improvements or otherwise (emphasis added)." 40 U.S.C. 102(9)(A)(iv). This provision first exempts from the definition of "property" "land withdrawn or reserved from the public domain." *Id.* It then provides an exception to the exemption where the land has been determined not to be suitable for return to the public domain due to substantial changes to the character of the land. *Id.* In sum, while land "withdrawn or reserved from the public domain" is *not* property (and therefore it is transferable by the Secretary of the Interior with the concurrence of the holding federal agency), land that has been withdrawn or reserved but substantially altered to an extent it cannot be returned to the public domain *may* constitute property (and therefore not be transferable by the Secretary of the Interior).

Defendant's argument glosses over the first clause of this provision (which is the actual exemption from the definition of property) and instead argues that the exception *to the exemption* does not apply because "[the NMNDA] has not been withdrawn or reserved by the Secretary…as not being suitable for the public domain due to a substantial change in its character[.]". ECF No.

12 at 3-4.[3] But that is not the operative clause for determining whether a parcel of land is exempted from the definition of "property" under the FPASA. That is instead the clause for determining whether "land withdrawn or reserved from the public domain (which is *not* property under the FPASA) should nevertheless be considered "property" because the Secretary has determined the lands are not suitable for return to the public domain due to substantial changes to the character of the land. As such, under the plain text of the exemption, the governing inquiry is whether the "land has been withdrawn or reserved from the public domain."

Turning to that inquiry, the NMNDA is clearly exempted from the definition of property, as Defendant himself acknowledges. *See* ECF No. 12 at 3 (arguing that "the subject property is not in the public domain"). President Roosevelt's original proclamation set apart this strip of land "from entry, settlement, or other form of appropriation under the public land laws and set apart as a public reservation," *see* Ex. 1, thereby removing the Roosevelt Reservation from the public domain.[4] Because the land was not within the public domain but has been withdrawn and reserved from the public domain, when Secretary Bergum withdrew and transferred the Roosevelt Reservation to the Department of the Army, he acted consistent with his statutory authority under the FLPMA. Defendant's argument must accordingly be rejected.

### III.    CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendant's

---

3 The Government agrees with Defendant that the exception to the exemption does not apply to the Roosevelt Reservation/NMNDA. However, in its proper context, that means that Secretary Bergum had the statutory authority to withdraw and transfer the subject property.
4 The term "public domain" generally refers to "all of the federal lands which were not withdrawn from availability for private acquisition pursuant to the homestead acts and other forms of land grants." James Huffman, *Managing the Northern Forests: Lessons from the West*, 19 VTLR 477, 478 n. 4 (1995).

Motion to dismiss on the basis that the DOI acted within statutory parameters in transferring the Roosevelt Reservation to the Department of the Army.

        Respectfully submitted,

        RYAN ELLISON
        United States Attorney

        *Ray Castellano* (signature)

        RANDY M. CASTELLANO
        ELIZABETH TONKIN
        Assistant United States Attorney and
        Special Assistant United States Attorney
        200 N. Church Street
        Las Cruces, New Mexico 88001
        Phone: (575) 323-5286

I HEREBY CERTIFY that on June 11, 2025
I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF electronic
filing system which will send notification to all
counsel of record.

*/s/ Electronically filed 6/11/2025*
RANDY M. CASTELLANO
Assistant United States Attorney